**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**GERNARD CHESTNUT,**

      **Plaintiff,**

**vs.**                        **Case No. 4:11cv305-WS/CAS**

**SERGEANT JAMES McCLENDON,
et al.,**

      **Defendants.**

_____/


**AMENDED REPORT AND RECOMMENDATION**

The pro se Plaintiff filed a fourth amended complaint, doc. 13, and after the eight

Defendants were served, docs. 25-40, they filed an Answer. Doc. 41. Defendants' first

affirmative defense in the Answer was that Plaintiff failed to exhaust administrative

remedies, doc. 41, at 2. Defendants were directed to clarify the defense or withdraw it,

doc. 46, and in response, Defendants filed a motion to dismiss on the basis that Plaintiff

failed to exhaust administrative remedies.[1] Doc. 47.

---

[1] After considering Plaintiff's response in opposition to the motion to dismiss,
doc. 49 (in which Plaintiff submitted a copy of a Note from Prisoner to demonstrate that
he exhausted his claim against Defendant McClendon), Defendant McClendon
withdrew the motion as to Plaintiff's claim concerning the August 12, 2010, incident
only.

On July 19, 2012, a report and recommendation[2] was entered on the Defendants

motion to dismiss. Doc. 52. It was concluded that Plaintiff failed to exhaust his claims

against the eight named Defendants for the use of excessive force on April 26, 2011.

*Id*. Plaintiff filed objections to that report and recommendation which, in particular,

contained as an exhibit a copy of a grievance dated April 30, 2011, written on the Note

from Prisoner form in which Plaintiff complained about the April 26, 2011, incident.

Doc. 53. On August 10, 2012, Senior District Judge William Stafford determined that

Plaintiff "raised a factual issue regarding exhaustion" and remanded the case for further

consideration of that issue. Doc. 54.

An evidentiary hearing was scheduled to resolve the exhaustion issue in light of

Plaintiff's objection. Docs. 60, 61. The hearing[3] was held on October 23, 2012, and

this amended report and recommendation is entered on the pending motion to dismiss,

doc. 47. The prior report and recommendation, doc. 52, is vacated by a separate Order

entered this day. At the hearing, Defendants preceded first, having the burden of

production, and Defendants' exhibits 1-6 were admitted in evidence without objection.

---

[2] The report and recommendation did not address Plaintiff's claim that Defendant
McClendon used excessive force against Plaintiff on August 12, 2010.

[3] In Bryant v. Rich, 530 F.3d 1368 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008),
the Eleventh Circuit directed that factual disputes concerning the exhaustion of
administrative remedies may be decided by the court sitting as fact-finder, "so long as
the factual disputes do not decide the merits and the parties have sufficient opportunity
to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Thus, evidence could be
presented to support or refute a contention that a prisoner has not exhausted the
grievance process because exhaustion is a "matter in abatement and not generally an
adjudication on the merits," thus, it should be raised and treated as a motion to dismiss,
not a summary judgment motion. *Id.* at 1374-75. When motions to dismiss are based
on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits
courts to hear evidence outside of the record on affidavits submitted by the parties."
Bryant, 530 F.3d at 1377, n.16.

Plaintiff's exhibits 1 and 3 were admitted in evidence without objection and exhibits 2 and 4 were admitted in evidence over a relevance objection. Plaintiff testified on his own behalf and Defendants called the following as witnesses: Plaintiff; Karol Beckowitz, records custodian at the Leon County Jail (hereinafter LCJ); Michael Buettner, case management technician at the LCJ; and Captain Kimberley Petersen, Bureau Commander at the LCJ. *See* doc. 72.

**Plaintiff's claims**

In the fourth amended complaint, Plaintiff alleged claims against eight Defendants for the use of excessive force. Doc. 13, at 9. Plaintiff alleged that force was unnecessarily used against him on August 12, 2010, and then again on April 26, 2011. *Id.* at 7-8. Because Defendant McClendon withdrew the motion to dismiss concerning the August incident, this Amended Report and Recommendation concerns only the April date in which all eight Defendants allegedly used unnecessary and excessive force against Plaintiff.

Plaintiff alleged that on April 26, 2011, Defendant McClendon entered Plaintiff's cell and threatened him because Plaintiff had been "requesting a shower." *Id.* McClendon removed Plaintiff from his cell and took him to another cell, depriving Plaintiff of his property and mattress. *Id.* While in this new cell, Plaintiff claimed that the fire sprinkler mysteriously "malfunctioned," flooding his cell with water. *Id.* at 7-8. McClendon arrived on scene pointing his taser at Plaintiff and demanding that Plaintiff lay face down. *Id.* at 8. Plaintiff claims he attempted to comply and got down on his knees "to keep from drowning" and contends he posed no threat. *Id.* At that time, the

other named Defendants "slammed" Plaintiff, punching him and kicking him, and
Defendant McClendon then tased Plaintiff "excessively." *Id.*

**Motion to Dismiss**

The motion to dismiss, doc. 47, asserted that Plaintiff did not exhaust
administrative remedies as required by section 1997e(a) of the Prison Litigation Reform
Act. Doc. 47, at 3. Defendants submitted an affidavit which stated that following the
April 26, 2011, incident, Plaintiff did not submit any notes, written complaints or
grievances concerning that event. *Id.* at 6. Defendants contend that Plaintiff has filed
many grievances and Notes from Prisoner in the past, that he is aware of the
procedures to seek administrative remedy, but did not do so on or about the April 26,
2011, incident. *Id.* at 5-6.

Attached to the motion is an affidavit from Kimberley Petersen, a correctional
officer employed by the Leon County Sheriff's Office. Doc. 47, ex. 1. Officer Petersen
explains that the Jail's grievance procedure is contained in the Leon County Jail Inmate
Handbook, and the Handbook is available in each housing pod for inmates to review.
*Id.* at 1. The first step in the grievance process is for an "inmate to write his complaint
on a 'Note from Prisoner' duplicate form and submit it to the Pod Officer for routing to
the appropriate staff." *Id.* at 2. A response is provided to the inmate and a copy placed
in the inmate's file. *Id.* If an inmate is not satisfied with the response provided, "he may
file a formal Grievance by writing a second Note from Prisoner to the Jail Administrator
describing the initial complaint and attaching a copy of the original [N]ote from
Prisoner." *Id.* The Jail Administrator responds to the formal grievance, and a copy is
placed in the inmate's file. *Id.*; *see also* doc. 47-1, at 23-25 (Inmate Handbook).

During the hearing, Petersen testified that the Note from Prisoner duplicate form contains a white and attached yellow page which is a duplicate.  The first step in advising the Jail of a problem or issue is done by submitting a "complaint" on the Note from Prisoner form.  Petersen explained the process of how complaints are received, routed, responded to, and then filed.  She testified that there is supposed to be a response on the bottom of the form, but if there is not enough room, the responding officer will use an attachment.  The yellow copy of the Note from Prisoner form is returned to the inmate and the white copy of the Note to Prisoner form is filed in the inmate's file.  If the inmate is not satisfied with first answer, he will attach a copy of the yellow response to a new Note from Prisoner form, and will submit that as a "grievance."

Regarding the April incident, Petersen explained in her affidavit that a "careful and diligent review" was made of Plaintiff's file and there was no record "of any Notes from Prisoner or other written complaints from the Plaintiff in accordance with the inmate grievance procedure relating to the incident that allegedly occurred on April 26, 2011."  *Id.* at 2-3.  Plaintiff had "submitted numerous Notes from Prisoner forms and grievances relating to other incidents occurring at the jail but none of them . . . related to" the April 2011 incident.  *Id.* at 3.

**Plaintiff's Response**

In Plaintiff's response to the motion to dismiss, Plaintiff states that after the alleged assault he was placed into a restraint chair.  Doc. 49 at 3.  Captain Petersen is alleged to have told Plaintiff that criminal charges would be filed against him, and Plaintiff said that her "decision was 'non-appealable' leaving Plaintiff with "no available

remedy" although Plaintiff said he "still attempted to grieve this incident which was only

answered by ignoring [his] complaints." *Id.*

**The Report and Recommendation**

The first Report and Recommendation, doc. 52, was entered on July 19, 2012.

The Report and Recommendation made this finding:

> At the outset, Plaintiff claims that he was unable to exhaust and had "no available remedy."  Yet, Plaintiff confuses Captain Petersen's statement that criminal charges would be filed against Plaintiff with the underlying events of the use of force.  Plaintiff was not precluded from filing a Note from Prisoner concerning the alleged use of force by either Petersen's statement or his temporary placement in the restraint chair.  Once Plaintiff was released from the chair, he could have submitted grievances on this issue.
>
> Plaintiff then contradicts himself in the response by stating that he "still attempted to grieve" the incident, but he provides no support for that assertion.  Plaintiff was able to provide copies of other grievances, *see* doc. 49-1, but he has not presented even one grievance to show he grieved the April 2011 use of force.  The procedures demonstrate that the grievance forms are duplicate forms and, thus, Plaintiff should have had a copy of his alleged grievances to submit.

doc. 52.  Following that Report and Recommendation, Plaintiff filed an Objection and,

for the first time in this case, filed a copy of a "grievance" allegedly written on April 30,

2011, concerning the use of force on April 26, 2011.  Doc. 53.  That grievance was

central to Plaintiff's case and of primary importance in resolving the issue of exhaustion.

**Evidence from the Hearing**

At the hearing, Plaintiff testified that he understood the grievance process.

Plaintiff admitted that he filed numerous grievances and agreed that in the past two

years, it could be true that he filed as many as 300 grievances or Note to Prisoner

requests.[4]  Plaintiff is, therefore, not inexperienced or unfamiliar with the grievance

process.

There was also testimony from Michael Buettner who is the case management

technician for the LCJ.  Buettner testified about the grievance process and how

grievances are finally located in an inmate's file.  Buetter explained that after an inmate

creates a Note from Prisoner and it gets answered, it is forwarded to him and he puts it

in the appropriate inmate's file.  Buetter does not recall ever seeing any Note from

Prisoner forms that were not responded to in some form.  Buetter said that if he came

across one, he would send it back for a response.

Plaintiff was equivocal on receiving responses to his complaints.  He first testified

that he had never gotten any responses, but upon further questioning said he has just

recently begun getting responses.  Plaintiff also first testified that jail officials do not

return the yellow duplicate page back to him, but instead often type up a memorandum[5]

and have him sign for it.  Plaintiff said at first that he did not have a single yellow copy,

but then ultimately admitted he had received yellow copies.  Defendant Petersen also

testified that she has seen Plaintiff's housing cell and has seen yellow sheets included

in Plaintiff's stack of grievances and Notes from Prisoner.

While Plaintiff asserted over and over again that officers at the jail do not always

follow their own procedures and do not always provide him with the yellow duplicate

---

[4] Testimony from the records custodian, Karol Beckowitz, showed that since 2010, Plaintiff has filed 468 Notes from Prisoner grievances and complaints which are located in his inmate file.

[5] Testimony from Petersen explained that if the response is lengthy to a complaint, a memorandum will be given to the inmate as the response.

page of his grievance, Plaintiff made an admission that negated his claim. Plaintiff testified that according to the jail procedure, if he does not get a response back to his grievance, he has "to write another one." Plaintiff said that he must first submit a complaint, and if you do not get a response that resolved the issue, he must file a second grievance. Plaintiff acknowledged that if he did not receive a response, he would not feel the issue had been resolved and he would be required to file a second grievance. Plaintiff complained that the rules require an inmate to attach the first Note from Prisoner form to the second grievance, but Plaintiff argued that he cannot do that if jail officials do not send the first one back to him when they do not respond. Plaintiff admitted, however, that he often makes copies of his complaints and, ergo, could have attached the copy to a "grievance" in which he complained that his complaint was not satisfactorily resolved. Plaintiff also testified that he attempted to send two or three more copies of the Note to Prisoner complaint dated April 30, 2011, but said he did not receive responses to those either.[6] Yet Plaintiff admitted the additional copies he submitted were identical to the first Note to Prisoner form he submitted, titled at the top of the page as a "Grievance." Thus, Plaintiff may have submitted multiple copies of the initial complaint, but he admitted that he did not submit a Note to Prisoner which would operate as the second step of the grievance process. Furthermore, while Plaintiff titled his Note to Prisoner as a "grievance," because it was only the first step in the administrative process, it acted as a "complaint" instead. The crucial admission by Plaintiff on this issue, however, came when Plaintiff admitted that he did not feel like he

---

[6] Plaintiff could not say when he submitted the additional grievances.

needed to do anything further because "they don't respond." Plaintiff admitted that he pursued only the first step of the grievance process.

**Analysis**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 38, pp. 4-5. The exhaustion requirement of § 1997e(a) is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), but not jurisdictional. Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007). If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown v. Sikes, 212 F.3d 1205, 1206, n.1 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

The evidence in this case conclusively demonstrates that Plaintiff did not exhaust administrative remedies because he did not complete the grievance process. Plaintiff acknowledged there was a two-step process, and he admitted he only filed one original Note from Prisoner. The first step is filing a "complaint" on the Note from Prisoner form and if not satisfied, the inmate must file a "grievance." The rules require attaching a "copy of the original Note from Prisoner describing the initial complaint" to the grievance. Doc. 49 at 7; Defendant's Exhibit 1 from the Hearing at 24. Plaintiff submitted only one complaint on April 30th which he testified was not answered. The fact that Plaintiff testified that he submitted several additional copies of that complaint, if believed, did not transform it into a grievance. Yet Plaintiff's testimony on that point is rejected. Considering the number of complaints Plaintiff has submitted during his three years at the jail, it is not plausible that Plaintiff did not complain about the fact that he had not received a response, if he had truly submitted the complaint. Even accepting Plaintiff's testimony on this point, that he submitted several copies of his April 30th complaint, it is insufficient to demonstrate exhaustion because Plaintiff did not *properly* exhaust administrative remedies.

In light of that conclusion, it is somewhat unnecessary to address credibility, but there is little reason to believe that Plaintiff submitted the complaint in the first place. Plaintiff was on notice at the outset that Defendants claimed he did not exhaust administrative remedies. Plaintiff came forward with a copy of a complaint to demonstrate that he had exhausted his claim concerning Defendant McClendon concerning the August 2010 incident, but Plaintiff did not come forward with the one, relevant piece of evidence, the complaint, until *after* issuance of the Report and

Recommendation.  Plaintiff was questioned in the hearing as to why he did not present the complaint in response to the motion to dismiss, and Plaintiff responded only that he had not found it earlier because he had so many papers.  That is not credible.  Plaintiff knew the importance of a document showing he submitted a complaint, and knew that Defendants had submitted an affidavit, doc. 47, ex. 1, and Defendants' ex. 6 from the hearing, stating he had not submitted such a complaint.  It is concluded that Plaintiff failed to provide it earlier because it did not exist earlier.

Also harmful to Plaintiff's case was his testimony in the hearing that he actually had two inmate witnesses.  Plaintiff submitted the affidavit of witness Kyle Harrison as evidence in this case, doc. 53 at 3, but Plaintiff claimed that the witness statement of inmate Isaac Worthy must have been "thrown away."  Plaintiff said that he did not watch the inmates write the statements, but knew it was done.  In particular, Plaintiff said that Harrison wrote the affidavit and turned it in to an officer, but it "disappeared." Plaintiff asked Harrison to write it again, which he did, giving it to Plaintiff.  Plaintiff testified that he made copies of the affidavit and sent it in with his grievance.  The time line for that to occur does not add up with Plaintiff's version of the facts.  Plaintiff alleged that the use of force took place on April 26, 2011, and even assuming that the inmate affidavits were drafted that day, the testimony established that if the affidavits were deemed to be complaints, they would be addressed the following morning, April 27th.  A response could be expected a few days later, but to find that by April 30th, the inmates had sufficient time to determine the prior affidavits "disappeared" such that Plaintiff could request Harrison write another affidavit is a stretch.  It is an even greater stretch considering the testimony that Plaintiff was housed in confinement and would

only have been allowed out of his cell one hour a day. Moreover, considering Plaintiff's repeated assertions that officials have lost or destroyed inmate complaints and, in particular, the two inmate affidavits, it is not believable that Plaintiff would not have referenced the affidavit of Harrison to some degree on his April 30th complaint since Plaintiff testified that he submitted it with his complaint.

After considering all the evidence, it is concluded that Plaintiff failed to exhaust administrative remedies. Plaintiff's initial argument at the outset of this case, that he was unable to exhaust and had "no available remedy" is the more credible assertion. Yet, Plaintiff was not precluded from filing a Note from Prisoner concerning the alleged use of force by either Petersen's statement that Plaintiff would face criminal charges or by his temporary placement in the restraint chair. Because Plaintiff filed over 450 complaints and Notes from Prisoner forms in three years, Plaintiff had the knowledge of what was required to exhaust. Plaintiff did not do so. Defendants' motion to dismiss, doc. 47, should be granted as to Plaintiff's claim concerning the April 26, 2011, use of force by all eight Defendants.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 47, be **GRANTED** as to Plaintiff's claims against Defendants McClendon, Brantley, Lane, White, Kassees, Mack, Carr, and Brown, for the use of excessive force on April 26, 2011, because Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e), and the case should be **REMANDED** for

further proceedings on the one surviving claim against Defendant McClendon for the

use of force on August 12, 2010.

**IN CHAMBERS** at Tallahassee, Florida, on October 24, 2012.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.